# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TRACY RHINE,

    Plaintiff,

    v.                                             Civil action No. 5:11cv133
                                                (Judge Bailey)

TERRY O'BRIEN, Warden;
LT. STEVEN GRIMM; LT. MARGIE
SERRANO; BRANDEE GAUL; and
LT. ROBERT POISSONNIER,

    Defendants.

## AMENDED[1] REPORT AND RECOMMENDATION

On September 30, 2011, plaintiff filed what was presented as a §2241 petition for writ of habeas corpus, along with an application and affidavit for leave to proceed *in forma pauperis* ("IFP") and a Prisoner Trust Account statement. Because the Trust Account report was not on the correct form, on September 30, 2011, a notice of deficient pleading was issued, directing plaintiff to file it on a court-approved form within twenty-one days.

On October 14, 2011, a preliminary review of the case revealed that it was not a habeas corpus action, but rather, a civil rights action by a federal prisoner challenging the conditions of her confinement, i.e., a <u>Bivens</u> action. Accordingly, an Order was entered, directing the Clerk to change the nature of the suit and cause of action and issue an amended deficiency notice. The amended deficiency notice was sent the same day, directing the plaintiff to re-file her complaint on a court-approved form, and to provide a Prisoner Trust Account Report and a Consent to Collect on court-approved forms within twenty-one days.

---

[1] This Report and Recommendation is being amended for the sole purpose of correcting a recommendation regarding a pending Motion for Sanctions/Motion for Extension of Time to Pay Initial Filing Fee on the last page.

1

On October 25, 2011, the plaintiff filed a letter motion for an extension of time to resubmit her claims, which was granted by Order entered the following day. On December 1, 2011, the plaintiff filed her court-approved <u>Bivens</u> form complaint.

On December 12, 2011, an Order was entered granting IFP status and directing plaintiff to pay an initial partial filing fee ("IPFF"). On December 14, 2011, an Order was entered, directing the plaintiff to file her Consent to Collect form, and staying the collection of fees until the form was received. On December 22, 2011, the plaintiff filed her Consent to Collect. Accordingly, on December 27, 2011, an Order was entered, resuming the collection of fees and directing the plaintiff to pay her IPFF by February 24, 2012.

On March 1, 2012, the plaintiff filed a Motion for Sanctions and Time Extension to Pay IPFF, requesting this Court to impose contempt of court sanctions against the prison's Trust Service Officer for failing to provide the IPFF as directed. By Order entered March 6, 2012, the defendant Warden O'Brien was directed to provide a response as to why plaintiff's IPFF had not been paid.[2]

On April 11, 2012, despite the fact that plaintiff's IPFF had not yet been paid, the undersigned conducted a preliminary review of the file and determined that immediate dismissal of the plaintiff's claims was not appropriate. Accordingly, an order to answer was entered.

On April 17, 2012, plaintiff filed a Motion requesting that submission of an appendix of documents evincing administrative remedies filed be admitted as evidence.

On April 26, 2012, plaintiff's IPFF was paid.[3]

---

[2] The *pro se* law clerk spoke by telephone with plaintiff's Unit Manager and the Trust Fund Specialist, on March 14, 2012, and determined that the Court's December 27, 2011 Order resuming the collection of fees and directing the plaintiff to pay her IPFF by February 24, 2012. Accordingly, a copy of the December 27, 2011 was re-sent.

[3] As best as can be ascertained, the delay in the payment of plaintiff's initial partial filing fee was apparently due to a series of several clerical errors. *The pro se* law clerk spoke by telephone to the BOP's general counsel on April 10, 2012 and April 12, 2012 to discuss the situation.

On June 7, 2012, the defendants moved for an enlargement of time and a consolidated response date. By Order entered June 8, 2012, defendants' motion for an enlargement of time and a consolidated response date was granted.[4]

On August 3, 2012, after service of the summons and complaint, the defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. A Roseboro notice was issued on August 6, 2012. On September 4, 2012, the plaintiff filed a response.

## II. Contentions of the Parties

**The Complaint**

In the complaint, the plaintiff asserts that defendant Warden O'Brien, through his 'personal knowledge, practice and policy" violated her First, Fifth, Eighth Amendment rights as well as her statutorily protected rights.

She alleges that the defendants failed to advise her that another inmate, Anna Rowland ("Rowland"), with whom she had previously been incarcerated before coming to U.S.P. Hazelton, had expressed animosity toward her. She avers that despite the defendants' knowledge of Rowland's hostility toward her, not only was she was sent to U.S.P. Hazelton with Rowland, they were celled together there. She alleges that on or about August 26, 2011, in full view of many witnesses, Rowland attacked her from behind, shoving her down a flight of metal stairs and attacking her with a lock, injuring her back and right eye. Afterwards, she alleges she received inadequate or no medical care for her injuries; and was placed in a dirty cell in the Special Housing Unit ("SHU"), either for protective custody, which she denies requesting or needing, or for violation of institutional rules, for which she claims she was found innocent. She alleges that her due process rights were violated when she was kept in the SHU for 4 days

---

[4] Plaintiff filed a response to the defendants' motion, objecting to the granting of the motion on various grounds and imputing improper motives to the defendants for filing it. (Dkt.# 41)

3

without a formal hearing. She further alleges that, as of one month after the attack, Special Investigative Services ("SIS") had still refused to investigate, review security tapes, or take witness statements.

Plaintiff alleges that because the defendants interfered with her ability to file for administrative remedies, on September 12, 2011, she wrote a letter to the U.S. Attorneys' office, requesting to file criminal charges over the attack. She alleges the defendants retaliated against her for writing the letter by placing her back in a dirty cell in the SHU for another twenty days, in violation of her First, Fifth and Eighth Amendment rights to free speech, due process and her right to be free from cruel and unusual punishment. Further, she alleges that she was denied cleaning materials for all but one day of her total three-week-confinement in the SHU.

Plaintiff alleges that the BOP is aware that she is mentally ill and that despite having a condition with her right shoulder that requires surgery, the defendants intentionally inflicted physical, emotional and mental pain by cuffing her behind her back.

Further, plaintiff alleges that defendants interfered with her access to the courts by: not providing administrative remedy forms when requested; not processing them when submitted; not cooperating with her requests to provide copies of her inmate trust account to the courts; and not paying her court-ordered initial partial filing fee ("IPFF") when ordered to do so by this court.

Finally, plaintiff alleges that "medical" is charging additional sick call fees; she is receiving inadequate treatment for pre-existing conditions; and that the prison's dentist is refusing to make her dentures.

As relief, plaintiff seeks compensatory damages of $15,000.00 each from defendants O'Brien, Grimm, and Serrano, and $5,000.00 apiece from defendant Lt. Poissonnier and Gaul;

4

punitive damages in the amount of $30,000.00 each from defendants O'Brien, Grimm, and Serrano, and $15,000.00 each from defendants Gaul and Poissonnier. Further, she requests an immediate transfer to a Texas prison; at least 4 months additional halfway house time; a recommendation to her sentencing judge that she be permitted to only serve one year of supervised release; immediate medical care for her injuries from the assault; an Order directing the BOP to release inmate trust documents; immediate placement in a Residential Re-Entry Center ("RRC"); and that the BOP be directed to comply with the administrative grievance procedure, statutes and codes as stated in its Program Statements and the Code of Federal Regulations.

**The Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment**

In response, the defendants assert that the plaintiff's complaint should be dismissed, or, alternatively, summary judgment should be granted to them, because the plaintiff is not entitled to relief for the following reasons:

a) she failed to exhaust her administrative remedies as to any of her claims;

b) she fails to state a claim upon which relief can be granted; and

c) the defendants are entitled to qualified immunity.

In the alternative, the defendants assert that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

**The Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment**

In a twenty-eight page response, plaintiff reiterates her previously made claims and attempts to refute the defendants' arguments as to the same. Plaintiff raises a number of new allegations, for which she provides no proof of exhaustion.

**The Defendants' Reply**

The defendants reiterate their position that the plaintiff failed to exhaust, noting that her response provided no evidence of exhaustion, and in fact, raised numerous other allegations, therein admitting she had not exhausted the new claims. Moreover, the defendants note that plaintiff's new allegations do not rise to the level of constitutional violations.

### III. Standard of Review

**Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley,

550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is properly only "[w]here the record taken as a whole could not lead a rational trier of fact to find the nonmoving party." Matsushita at 587 (citation omitted).

## IV. Analysis

**A. Failure to Exhaust**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular

episodes"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth at 741 n. 6.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint (BP-9), called a Request for Administrative Remedy, with the warden at the institution where the inmate is incarcerated, within 20 calendar days of the date of the occurrence on which the complaint is based. See 28 C.F.R. § 542.10, et seq. If the inmate is not satisfied with the Warden's response at the institutional level, he may appeal to the Regional Director of the Federal Bureau of Prisons (BP-10) for the geographic region in which the inmate's institution of confinement is located, within 20 calendar days of the Warden's response. (For inmates confined at USP-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) Finally, if the prisoner has received no satisfaction, he or she may appeal to the Office of the General Counsel within 30 calendar days of the date the Regional Director signed the response, via a Central Office Administrative Remedy Appeal (BP-11). An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies. See Woodford v. Ngo, 548 U.S. 81, 93-94 (2006) (the PLRA requires *full* and *proper* exhaustion); see also 28 C.F.R. § 542.10-542.15; and Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

---

[1] Porter at 524.

9

Here, although plaintiff's civil rights claim was not properly docketed as a Bivens claim until October 14, 2011, and the plaintiff did not re-file her civil rights claim on a court-approved form until December 1, 2011, it is clear from the record that the plaintiff first raised these claims by filing suit on September 30, 2011, albeit improperly, on a court-approved form complaint for a habeas corpus petition pursuant to 28 U.S.C. §2241.

A review of the record shows that as of September 30, 2011, the date that the plaintiff first filed suit, she had failed to fully administratively exhaust any of her claims. Although all total, she filed seventy-two administrative remedies between September 14, 2011, and June 27, 2012, at least seventeen of those administrative remedies addressed the claims raised in her complaint. However, in only three of the seventeen did she file a BP-9 at the institution, and so consequently, many of those were rejected for filing at the wrong level, and for failing to first file a BP-9.[5] Further, some of plaintiff's BP10 regional filings attached what appeared to be falsified 'white'[6] photocopied BP-9's that did not include a remedy number; their apparently falsified basis was obvious "because when a remedy is keyed into the system at the institution, a remedy number is assigned and written onto the form[,] . . . allow[ing] for the remedy to be tracked at each subsequent level." (Dkt.# 46-6 at 2-3). Moreover, even if plaintiff had properly filed BP9s for each one of her administrative remedies as required, she did not file her first administrative remedy regarding *any* of the claims raised in her complaint until September 26, 2011, *four days before filing suit*. As such, it is impossible for her to have fully exhausted any of the claims raised. Additionally, contained within many of the later-filed administrative

---

[5] Others were rejected for: including more than one claim within an administrative remedy; including more than one continuation page; not first attempting informal resolution; being untimely; and for failing to attach copies of BP9s.

[6] BP9 forms are blue; upon filing a BP9, inmates are provided two copies of their blue BP9, one for their personal records, and one to attach to their BP-10 filing. Both of the remedies attached to plaintiff's complaint were never filed, as evidenced by their failure to reflect the remedy number that is assigned once a BP9 is properly filed. (Declaration of Marvella Heard, Administrative Remedy Clerk, Mid-Atlantic Regional Office of the BOP, Dkt.# 46-6 at 3).

remedies, are admissions by plaintiff that she first filed them in early November, 2011, which is more than one month after she filed suit. See Dkt.# 33-1 at 1, 33-1 at 3, Dkt.# 15-2 at 1, and Dkt.# 15-3 at 1. Because none of the administrative remedies have been fully exhausted, the undersigned will not undertake an examination on their merits of plaintiff's many claims, or a particularized analysis of the dates each of them were filed and reasons for which they were denied.

Finally, plaintiff has filed no administrative remedy at all with regard to her complaints that health services charged extra sick call fees; provided inadequate treatment for pre-existing health conditions; that the prison's dentist refused to make her dentures; or the numerous new claims plaintiff raised in her rambling, twenty-eight page response.[7] Because it is apparent that plaintiff failed to even initiate the administrative remedy process regarding these particular claims, these claims, along with all of the others raised in the complaint should be dismissed for the failure to exhaust administrative remedies. See Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Because it is clear that the plaintiff failed to properly exhaust her Bivens claims and she cannot now do so under the BOP's administrative remedy procedures,[8] her claims should be dismissed with prejudice. See 28 C.F.R. § 542.10, *et seq.*

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss or in the Alternative, for Summary Judgment (Dkt.# 45) be **GRANTED** and the

---

[7] Not only has plaintiff not even attempted to prove exhaustion for the new claims, most of them have nothing whatever to do with the named defendants and do not rise to the level of constitutional violations.

[8] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9)**, within 20 calendar days of the date of the occurrence on which the complaint is based**. See 28 C.F.R. § 542.10, *et seq.* (emphasis added).

11

plaintiff's Bivens complaint (Dkt.# 15) be **DISMISSED with prejudice,** because plaintiff failed to exhaust her claims administratively, and she can now no longer do so.

Further, the undersigned recommends that plaintiff's pending Motion for Sanctions, Motion for Extension of Time to Pay Initial Partial Filing fee (Dkt.# 25) be DENIED as to the Motion for Sanctions and DENIED as moot as to the request for an extension of time to pay the initial partial filing fee; and that the pending Motion that Submission of Appendix Documents be Admitted as Evidence be GRANTED. (Dkt.# 33).

Within **fourteen (14) days** after being served with a copy of this report and recommendation, **or by October 9, 2012,** any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the United States District Court Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to her last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: September 26, 2012.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE